(No. 33614.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT KEAGLE, Plaintiff in Error.

*Opinion filed November 30, 1955—Rehearing denied Jan. 16, 1956.*

ROBERT KEAGLE, *pro se.*

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, WILLIAM L. CARLIN, and FRANCIS X. RILEY, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is a writ of error by defendant Robert Keagle to the criminal court of Cook County to reverse a conviction of armed robbery. The defendant was sentenced to a minimum of 25 years and a maximum of life in the State Penitentiary. Defendant appears here *pro se.*

Defendant Keagle was indicted in May, 1952, with William Seppi and Andrew Mikka for armed robbery. The indictment also contained an habitual criminal count. All three defendants were found guilty as charged in the indictment. Keagle sued a writ of error out of this court. On a confession of error, we reversed and remanded with directions to strike the portions of the indictment referring to the previous offense of robbery, to require a plea to the indictment to the extent of the charge of armed robbery, and for a new trial. *People* v. *Keagle,* No. 32913, September Term, 1953, (not reported.)

Pursuant to the mandate, Keagle was again arraigned and pleaded not guilty to the charge of armed robbery. A *nolle prosequi* was then entered as to count 2, referring to the previous offense of robbery.

On the trial one Braasch testified that he was the owner of a tavern and was working behind the bar at 2 A.M. on February 23, 1952, when he saw a man with a handkerchief over his mouth and a gun in his hand standing four

feet from him; that two other men were with him holding handkerchiefs over their mouths and one had a gun; that the first man, and one of the others in a brown topcoat went behind the bar, took $20 from the cash register and threatened to "work him over;" that one of the men then asked whether there was any other money, and Braasch told him there was, and the same two men followed him into the back room, took $80 from a cigar box, and the man in the brown coat took a gun from his pocket. Braasch identified Keagle as the man in the brown coat. He saw the man first about 20 feet away, but later, in the small back room, he faced him at arms length under a bright light. Three hours after the occurrence, he immediately picked Keagle out of a line-up, although he was then wearing another coat. Seppi and Mikka were brought into the court room and were identified as the other two men who had the guns. Seppi was identified as the man witness first saw.

Braasch's father identified Mikka as one of the men, described the car in which the men escaped and also corroborated the testimony of his son with regard to the two men who took him into the back room. He identified the car as a dark blue 1941 Ford coupe, and testified that the three men got into the car and drove away.

The two sheriff's deputies testified that they picked up Keagle, Seppi and Mikka about 3 A.M. in a blue Ford coupe. A .32 automatic was found on Seppi, a P.38 gun was found in the car, and the .32 Harrington and Richardson revolver taken from Braasch was found some 12 feet from the car.

The defense offered no evidence.

Defendant Keagle, appearing here *pro se,* alleges several errors. The first relates to the effect of the prior mandate of this court. In this respect the defendant contends that the trial court erred in not striking count 2, pursuant to the mandate, rather than merely permitting the

entry of a *nolle prosequi* thereon. He contends that this error was prejudicial to him on the trial and placed him in double jeopardy. The defendant was not tried or convicted on count 2, but on count 1, the charge of armed robbery. In this case we consider that the entry of a *nolle prosequi* carried out the mandate of this court since there is nothing in the record to indicate that knowledge of the prior conviction, alleged in count 2, reached the jury. Nor is there any evidence of prejudice affecting the trial judge. Since the Habitual Criminal Act, on which count 2 was based, defines a penalty rather than a crime, and there is only one crime charged here, the question of double jeopardy cannot arise. (*People* v. *Kirkrand,* 397 Ill. 588; *People* v. *Allen,* 368 Ill. 368.) It should also be noted that defendant did not move the trial court to strike count 2, nor did he object to the *nolle prosequi,* nor did he raise this alleged error by his motion for a new trial. We must regard any alleged error in the failure to strike count 2 as waived. *People* v. *Brand,* 415 Ill. 329.

Defendant next argues that he has been placed in double jeopardy by his retrial on the charge of armed robbery as ordered by this court in its mandate. He contends that on his first trial he was convicted of robbery in the manner and form as charged in the indictment, that such a verdict amounted to a conviction of unarmed robbery and an acquittal of armed robbery; that he, therefore, cannot be again tried for armed robbery. We cannot agree. A finding of guilty in the manner and form as charged in the indictment is a finding of guilty on each count of the indictment. We passed on this question in *People* v. *Bailey,* 391 Ill. 149. The defendant there was under indictment on counts almost identical to the case at bar, armed robbery and unarmed robbery. A general guilty verdict was returned in the same language as in the case at bar. We there held that these were related felonies and the verdict was on each count of the indictment. Since the greater includes

the lesser, it was incumbent on the jury to eliminate the greater charge from the verdict. By the general guilty verdict at the first trial, defendant was convicted of both armed and unarmed robbery, (*People* v. *Sheehan,* 407 Ill. 545,) and upon reversal of that conviction and remandment for a new trial, jeopardy does not attach. *People* v. *Woodward,* 394 Ill. 433.

Defendant also contends that the evidence does not sustain the verdict, in that his identification was not sufficient to remove reasonable doubt, and cites several cases in which we have reversed cases on the basis of inadequate identification. There is no question but that the State must prove, beyond a reasonable doubt, the perpetration of the crime by the person accused, (*People* v. *Kidd,* 410 Ill. 271; *People* v. *Del Prete,* 395 Ill. 110,) but this is ordinarily a question of fact for the jury. (*People* v. *Tomaszewski,* 406 Ill. 346; *People* v. *Leach,* 398 Ill. 515.) We will not reverse a conviction on the question of sufficiency of identification unless it is contrary to the weight of the evidence, or is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People* v. *Ortega,* 5 Ill. 2d 79; *People* v. *Harris,* 391 Ill. 358.) The doubt must be reasonable and well founded. *People* v. *Ortega,* 5 Ill. 2d. 79; *People* v. *Del Prete,* 395 Ill. 110.

We have read the entire testimony in the record and must conclude that the identification of defendant Keagle was positive, convincing and uncontradicted. Witness Braasch was corroborated as to much of his testimony by his father. Defendant was found about an hour after the occurrence with Seppi and Mikka and two guns. The gun taken from the prosecuting witness was found about 12 feet from the car. On cross-examination, counsel pointed out certain discrepancies in the testimony of the prosecuting witness at the prior trial. We do not believe these discrepancies were substantial, and the question of his credibility was for the jury. *People* v. *Bloom,* 370 Ill. 144.

Defendant next contends that the trial court erred in refusing a mistrial after a witness had alluded to defendant's previous record. This testimony arose when a police officer, in response to a question regarding conversations with the defendant, stated: "He also told me that he had served time with Seppi." Upon objection, the trial court immediately sustained the objection, struck the answer, and ordered the jury to disregard it. The trial court first denied the motion for a mistrial, but when the defense rested without putting the defendant on the stand, the trial court stated to both the defendant and his counsel, that if he renewed his motion for a mistrial at the close of all the evidence, the court would grant it and declare a mistrial. After consultation with the defendant, counsel refused to renew the motion for a mistrial. This offer to declare a mistrial was made and rejected by defendant on two different days. Under these facts, the defendant joined in making this alleged error.

We feel that the conduct of the trial court in this respect assured the defendant of a fair trial. Conceding that the unsolicited statement of the police officer was error, it persisted only because of defendant's refusal to accept a mistrial. It is not our function as a court to reverse for any error in the record; but rather to insure a fair trial and to determine that the conviction is based on evidence establishing guilt beyond a reasonable doubt. (*People* v. *Tilley,* 411 Ill. 473; *People* v. *McCurrie,* 337 Ill. 290.) In the case at bar defendant desired to go to the jury on the record as it then stood. He was then satisfied that the error alleged was not substantial and did not prejudice his case before the jury; he then was satisfied that he had a fair trial. We will not permit him to refuse the court's offer of a mistrial, gamble on the verdict of the jury being in his favor, and yet retain for use on appeal, in event of an adverse verdict, a valid claim of error based on such conduct.

Defendant next contends the trial court erred in permitting Seppi and Mikka to be brought into court to be identified by the witnesses for the People. The People contend that this was proper corroboration of the witnesses' testimony. We recently condemned this practice in *People* v. *Rezek,* 4 Ill. 2d 164, and in *People* v. *Bennett,* 413 Ill. 601. As we pointed out in *People* v. *Rezek,* such testimony usually has no relevancy to the guilt of the defendant being tried. However, some relevancy is established in the case at bar, for Seppi and Mikka were identified both as present and engaged in the robbery and also as the persons in the car with defendant Keagle when he was arrested an hour after the robbery. We also pointed out in the *Rezek case* that the weight of positive identification of the accused is a matter for the jury, and we would not be inclined to reverse the judgment for that error alone. From a reading of the entire record, we do not believe that the presentation of Seppi and Mikka prejudiced the rights of the accused.

We have also read the rebuttal argument of the People, objected to by defendant, and find nothing inflammatory and prejudicial or beyond the bounds of proper reply. (*People* v. *Pugh,* 409 Ill. 584.) It is true that the prosecutor emphasized the uncontradicted character of the People's case. However, there was no evidence whatever contradicting the case of the People, and a statement pointing out this fact is not an unwarranted reference to the failure of the defendant to testify. *People* v. *Novak,* 370 Ill. 220; *People* v. *Birger,* 329 Ill. 352.

Defendant next complains of the incompetency of his counsel on the trial and cites a number of alleged failures or errors on the part of counsel. In examining the record we feel that counsel acted in accordance with sound professional judgment. When offered a mistrial, this offer was communicated to defendant and refused. The decision of whether an accused should take the stand is essentially one of judgment, as is the extent of cross-examination of

witnesses. If defendant's counsel erred, we suggest that human error is easily observed by those having the benefit of the second guess. On the whole record we cannot say that the representation afforded defendant was inadequate or perfunctory. *People* v. *Stephens,* 6 Ill. 2d 257; *People* v. *Reeves,* 412 Ill. 555.

Defendant has assigned other errors, but they are too insubstantial to merit separate discussion. On the basis of the entire record we are convinced that defendant was given a fair trial, and the positive identification of the accused was sufficient for the jury to determine his guilt beyond a reasonable doubt. The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*